THE HAAKINSON & BEATY CO., APPELLEE, v. INLAND
INSURANCE COMPANY, APPELLANT.

344 N.W.2d 454

Filed February 10, 1984.   No. 83-089.

James W. Hewitt, for appellant.

Dennis R. Riekenberg of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal presents to the court a case of first impression in this jurisdiction and concerns itself with

the question of whether a forum selection clause, in an indemnity bond, requiring suit to be brought where the project or any part thereof is situated is valid. and enforceable as against a materialman seeking to collect on the bond. The trial court found the provision of the bond to be contrary to the public policy of the State of Nebraska, and therefore void and unenforceable. Additionally, the trial court determined that the materialman was not bound by the clause. We believe that the trial court was in error and that the judgment must be reversed and the cause remanded.

R. R. Butler Construction, Inc. (Butler), a Nebraska corporation, entered into a contract with Walnut Community School District (Walnut), located in Pottawattamie County, Iowa, to construct a building addition for the school district. On February 19, 1979, Butler, as principal, executed a labor and material payment bond with Inland Insurance Company (Inland) as surety, an insurance company registered to do business in Nebraska. Among other provisions, the bond contained the following: ''3. No suit or action shall be commenced hereunder by any claimant: . . . c) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.'' The provisions of subparagraphs (a) and (b) are not material to our discussion.

During the course of construction, Butler ordered materials for the project from the appellee, The Haakinson & Beaty Co. (Beaty), a corporation doing business in Iowa. After the materials had been delivered to the jobsite and Butler failed to pay, Beaty brought suit on the bond, in the district court for Douglas County, Nebraska, to recover the amount due and owing. Although final payment on the job was certified to by the architect on July 12, 1980, suit

was not brought by Beaty on the bond until January 15, 1982. Inland filed a motion to dismiss, contending that, under the provisions of the bond, suit could only have been brought in the appropriate county in Iowa, if in state court, or the appropriate U.S. District Court in Iowa, if in federal court. As we have indicated, the trial court overruled the motion to dismiss and granted summary judgment in favor of Beaty and against Inland for the amount owing, and Inland perfected its appeal to this court.

Inland assigns as error that (1) the trial court erred in finding that the forum selection clause in the bond was not valid and was contrary to public policy, and (2) the trial court erred in finding that a third-party beneficiary was not bound by the terms and conditions of the contract under which suit was brought.

While the question of attempting to determine whether the provisions of a contract are contrary to public policy is not always easy and clear, in the instant case we believe the answer is apparent. The provision of the bond in question is in accordance with Neb. Rev. Stat. § 25-415 (Reissue 1979), which provides as follows: "If the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless (1) the court is required by statute to entertain the action; (2) the plaintiff cannot secure effective relief in the other state, for reasons other than delay in bringing the action; (3) the other state would be a substantially less convenient place for the trial of the action than this state; (4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; or (5) it would for some other reason be unfair or unreasonable to enforce the agreement." Section 25-415 is part of the Model Uniform Choice of Forum Act adopted by the Legislature of the State of

Nebraska in 1969. See 1969 Neb. Laws, ch. 179, §§ 1-5, pp. 769-70.

Can we therefore say that a provision of a contract enacted pursuant to a statute adopted by the Legislature of the State of Nebraska is contrary to public policy? We believe that, under generally recognized rules applicable to cases of this nature, we cannot. What is public policy must be determined from a consideration of the federal and state Constitutions, the laws, the decisions of the courts, and the course of administration, and not by the varying opinions of laymen, lawyers, or judges. See 17 Am. Jur. 2d *Contracts* § 177 (1964). Constitutional or statutory provisions, absent an infirmity in the law itself, govern what is the public policy. That is to say, where the lawmaking power speaks on a particular subject, over which it has constitutional authority to speak, the public policy in such a case is what the statute provides. See, *Chicago, B. & Quincy R. R. Co. v. McGuire*, 219 U.S. 549, 31 S. Ct. 259, 55 L. Ed. 328 (1911); *United States v. Freight Association*, 166 U.S. 290, 17 S. Ct. 540, 41 L. Ed. 1007 (1897). As a general rule, courts cannot declare agreements or acts authorized by statute to be contrary to public policy unless the courts are first prepared to determine that the statute authorizing the act is itself unconstitutional. See, 17 Am. Jur. 2d, *supra*; *Chicago, B. & Quincy R. R. Co. v. McGuire*, *supra*. No one has contended, nor are we able to determine, that the provisions of § 25-415 are either beyond the authority of the Legislature or inherently unconstitutional. If, then, § 25-415 is a valid exercise by the Legislature, we are compelled to determine that the provision contained in Inland's bond is not void as being contrary to public policy. Quite to the contrary; it is valid because it is consistent with the public policy as reflected in the act authorizing such provisions. To hold otherwise would be to ignore the will of the people as reflected by their elected representatives.

In declaring the provision of Inland's bond valid, enforceable, and not contrary to public policy, we quickly add, however, that whether the exceptions contained in § 25-415 are specifically spelled out in the bond or not, they are a part of the bond and must be considered by any court when called upon to determine whether the action should be dismissed. It has long been the law, in both this jurisdiction and elsewhere, that the law of the state is an inherent part of every contract and that every contract is made with reference to and subject to the existing law, and every law affecting the contract is read into and becomes a part thereof. See, *Bobbitt v. Order of United Commercial Travelers*, 180 Neb. 285, 142 N.W.2d 351 (1966); *State v. Hurley*, 201 Neb. 569, 270 N.W.2d 915 (1978); *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979). By granting to the trial court the opportunity to refuse to dismiss the action where facts consistent with the limitations of § 25-415 exist, the courts are not denied their inherent authority to consider appropriate matters presented to them. We do not believe that the forum clause in question is akin to the provisions in a contract which shorten the statute of limitations or require binding arbitration, as suggested by Beaty. The courts are still given wide latitude under appropriate circumstances to permit the action to be heard. We believe that the provisions of § 25-415 are valid, and, likewise, the provisions of the bond are enforceable.

Beaty argues that even if the provision is not void as being contrary to public policy, nevertheless, it does not apply to Beaty because Beaty is not one of the parties who "agreed in writing" to this provision, as required by the statute, but, instead, Beaty is a third-party beneficiary who is not bound by the terms of the agreement. In support of its position Beaty cites to us the case of *Forburger Stone Co. v. Lion Bonding & Surety Co.*, 103 Neb. 202, 170 N.W. 897 (1919). While it is true that this 4 to 3 decision

seems to stand for the proposition advanced by Beaty, we believe that a reading of the decision makes it clear that *Forburger* stands alone and is contrary to both the law in this jurisdiction and elsewhere. In 17 Am. Jur. 2d, *supra* § 315 at 743-44, the author notes: "A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and promisee. The right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, which must affirmatively appear from the language of the instrument when properly interpreted or construed; and the liability so appearing cannot be extended or enlarged on the ground alone that the situation and circumstances of the parties justify or demand further or other liability. It has been said that before the beneficiary may accept the benefits of the contract, he must accept all of its implied, as well as express, obligations. It has also been said that if the beneficiary accepts, he adopts the bad as well as the good, the burden as well as the benefit. The right of a third person for whose benefit a promise is made is affected with all the infirmities of the contract as between the parties to the agreement." This holding is consistent with the decisions of our own court, where, as early as 1894 in *Simms v. Summers*, 39 Neb. 781, 58 N.W. 431 (1894), we adopted a similar rule. See, also, *In re Estate of Reynolds*, 131 Neb. 557, 268 N.W. 480 (1936); *Dealers Electrical Supply v. United States F. & G. Co.*, 199 Neb. 269, 258 N.W.2d 131 (1977).

As noted by Justice Cornish in one of the three dissents in *Forburger, supra* at 209, 170 N.W. at 899: "Just as the stream can never rise higher than its source, nor the less include the greater, nor the accidental be more regarded than the intentional, nor one reap where he has not sown, so the promisor is never bound to more than his promise, and the stranger to the contract can have no better nor higher rights in the contract than the parties to it.

He gets any possible right he may have through the promise made to the obligee, and that is the promise that must be left as made and only as made."

It would be a strange situation if one could sue on a contract and gain all of its benefits, and yet be permitted to ignore any of its obligations. *Forburger* is simply a voice in the wilderness and should be disregarded. Beaty, as a third-party beneficiary under this bond, received benefits from the bond and, likewise, was subject to all of its burdens, including the forum selection clause. To the extent that *Forburger* stands to the contrary, it is overruled.

Absent a showing by Beaty that any of the exceptions of § 25-415 are applicable, we believe that the forum selection clause of the bond is valid and binding on Beaty and that the trial court was in error in overruling the motion by Inland to dismiss and in granting summary judgment in favor of Beaty. For this reason the judgment of the trial court is reversed and the cause remanded with instructions to proceed in accordance with this opinion.

REVERSED AND REMANDED.

WHITE, J., concurring.

The Legislature, for reasons best known to itself, has seen fit to permit a licensed Nebraska insurance company to issue policies which deny persons claiming under those policies access to the courts of the State of Nebraska.

While legislation may indeed express the public policy of the state, to a greater extent the state Constitution does also.

Article I, § 13, of the Constitution of the State of Nebraska states: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

Neb. Rev. Stat. § 25-415 (Reissue 1979) excepts from the choice of forum provisions a number of categories set forth in the majority opinion. As I

am not convinced that the statute, as written, denies meaningful access to a judicial forum (though not a Nebraska forum), I reluctantly concur.

I do, however, state unhesitatingly that absent the exceptions of the statute, the Model Uniform Choice of Forum Act would clearly violate our Constitution.

HASTINGS, J., joins in this concurrence.