THOMAS G. BOWLEY AND LANETTE S. BOWLEY, APPELLANTS, V.
VILLAGE OF BENNINGTON ET AL., APPELLEES.

488 N.W.2d 354

Filed August 28, 1992.   No. S-89-1331.

John W. Steele, of Schumacher & Achelpohl, for appellants.

John W. Iliff, of Gross & Welch, P.C., for appellee Village of Bennington.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiffs, Thomas G. and Lanette S. Bowley, brought this action to quiet title to a parcel of land described as the north one-half of Warehouse Street abutting Lot 3, Block 12, in the Village of Bennington, Nebraska. The Bowleys now appeal from the district court's order granting the motion of the defendant Village of Bennington for summary judgment.

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or as to the ultimate inferences deducible from such fact or facts and that the moving party is entitled to

judgment as a matter of law. *Antelope Cty. Farmers Coop. v. Citizens State Bank*, 240 Neb. 760, 484 N.W.2d 822 (1992); *Flamme v. Wolf Ins. Agency*, 239 Neb. 465, 476 N.W.2d 802 (1991). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Antelope Cty. Farmers Coop. v. Citizens State Bank, supra*; *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

The record shows that on January 2, 1980, Dale V. Neumeyer executed a warranty deed to the Bowleys conveying to them "Lots 1, 2, and 3, Block 12, Village of Bennington, and the East one-half of Vermont Street, adjacent to said lots." The portion of Vermont Street described in the deed had previously been vacated by the village. The portion of Warehouse Street to which the Bowleys seek title abuts the southern boundary of lot 3.

Warehouse Street was dedicated on November 15, 1887, when the Pioneer Town Site Company acknowledged and recorded a plat for the purpose of laying out the Village of Bennington. No issue has been raised concerning acceptance.

The Village of Bennington was incorporated on April 12, 1892, and on that date the village acquired title to Warehouse Street. See, 1879 Neb. Laws, §§ 104-106, pp. 233-234; Neb. Rev. Stat. §§ 17-415 to 17-417 (Reissue 1991); *Belgum v. City of Kimball*, 163 Neb. 774, 81 N.W.2d 205 (1957); *Carroll v. Village of Elmwood*, 88 Neb. 352, 129 N.W. 537 (1911). However, the village did not open or improve Warehouse Street prior to 1987.

After purchasing Lots 1, 2, and 3, Block 12, plaintiff Tom Bowley appeared at a March 1981 meeting of the village board of trustees to ask whether Warehouse Street had been vacated. At this meeting, Bowley requested that Warehouse Street be rocked if it had not been vacated. The village later determined that Warehouse Street had not been vacated, and the following entry appears in the minutes of the meeting of the village board on July 13, 1981: "Letter from Tom Bowley was read and discussed. The Board has no plans to vacate Warehouse Street. We do not have to use the property as a street at this time but might want to at a later date."

A letter dated October 6, 1981, from the attorney for the village to the Bowleys' attorney indicates that the village board did not wish to vacate Warehouse Street at that time because the board believed that the street might be needed for access to a proposed waste-water treatment facility near Bennington.

At some time prior to March 23, 1987, the Bowleys brought an action, which preceded this quiet title action, seeking a writ of mandamus to force the village to open Warehouse Street so that they would have southern access to lot 3. At that time, a house which was occupied by a Mrs. Skidmore, an elderly widow, was located on the portion of Warehouse Street which abuts lot 3. The Skidmore house had stood on Warehouse Street for at least 18 years. At a March 23, 1987, hearing held in connection with the Bowleys' mandamus action, the district court found that there had never been any public use of Warehouse Street and that the decision to open, or not to open, Warehouse Street was one which was left to the discretion of the village board of trustees.

In May or June 1987, Mrs. Skidmore no longer needed her house, and the village board decided that the house should be removed. The minutes of the July 13, 1987, meeting of the board of trustees indicate that the Skidmore house was razed and that the area was leveled, graded, sanded, and rocked, all at the village's expense.

On November 14, 1988, the village board passed an ordinance vacating the south one-half of a portion of Warehouse Street. The parcel vacated lies south of the Bowleys' lot 3; however, the village did not vacate any part of the north one-half of Warehouse Street. Thus, the village retained title to the portion of Warehouse Street which abuts lot 3.

The Bowleys' amended petition in this action was filed June 28, 1989, and alleges, in part, that "Warehouse Street has never been officially dedicated nor opened as a public street." While the amended petition does not allege that the north one-half of Warehouse Street abutting lot 3 has ever been vacated, it does, in effect, allege that the Bowleys should be awarded title to that parcel by virtue of their adverse possession of that property. See, Neb. Rev. Stat. § 25-202 (Reissue 1989); *Hadley v. Ideus*, 220 Neb. 878, 374 N.W.2d 231 (1985). However, in this appeal,

the Bowleys concede that they cannot acquire any portion of Warehouse Street as against the village by adverse possession. See Neb. Rev. Stat. § 39-1404 (Reissue 1988). Instead, the Bowleys argue that their predecessors in interest acquired title to the disputed parcel "by operation of law."

In making this claim the Bowleys cite 1879 Neb. Laws, § 3, p. 120. This is the sole ground upon which the Bowleys, in this appeal, claim title to the disputed parcel. The section cited states:

> All roads within this state, which have been laid out in pursuance of any law of this state, or of the late territory of Nebraska, and which have not been vacated in pursuance of law, are hereby declared to be public roads: *Provided*, that all roads that have not been used within five years shall be deemed vacated.

(Emphasis in original.) The Bowleys point out that in their prior mandamus action, the district court found that there had never been any public use of Warehouse Street; they then cite the above quoted language and contend that their predecessors in interest of lot 3 acquired the north one-half of Warehouse Street by operation of law in November 1892, 5 years after the Pioneer Town Site Company acknowledged and recorded a plat for the purpose of laying out the Village of Bennington. The Bowleys assert that they, in turn, acquired ownership of the disputed parcel when they received a warranty deed granting them their interest in lot 3.

The Bowleys' claim has merit only if 1879 Neb. Laws, § 3, p. 120, applies to streets located within incorporated villages. It is clear that the cited legislation has no such application.

The section cited is part of an act amending chapter 47 of the Revised Statutes of 1866. Section 1, p. 120, of that act states in part, "The county board has a general supervision over the *public roads* of the county, with power to establish and maintain them as herein provided, and to see that the laws in relation to them are carried into effect." (Emphasis supplied.)

Section 32, p. 126, of the act states, "*All public streets of villages not incorporated are a part of the public road*; and all road overseers or persons having charge of the same, in the respective districts of such villages, shall work the same as

provided by law." It is apparent from this language that 1879 Neb. Laws, § 3, p. 120, applied only to roads located outside the borders of incorporated villages and did not apply to streets located within incorporated villages. Consequently, the disputed parcel was not vacated by operation of law as the Bowleys allege.

The fact that 1879 Neb. Laws, § 3, p. 120, did not effect a vacation of Warehouse Street by operation of law is also made apparent by a separate 1879 legislative act. In addition to the act cited by the Bowleys, the Legislature passed another act in 1879, the purpose of which was "[t]o provide for the organization, government, and powers of cities and villages." 1879 Neb. Laws, p. 193. This act gave villages the power to "*open*, widen, or otherwise improve or *vacate* any street, avenue, alley, or lane within the limits of the city or village." (Emphasis supplied.) 1879 Neb. Laws, § 69 XXVII, p. 216. This legislation further set forth the method by which owners of land could subdivide their property for the purpose of laying out a village, and specified the method by which streets designated in the plat could be vacated. 1879 Neb. Laws, § 104-112, p. 233-235.

In *Van Buren v. Village of Elmwood*, 83 Neb. 596, 599, 119 N.W. 959, 960 (1909), this court cited 1879 Neb. Laws, § 69 XXVII, p. 216, and stated: "The power to vacate streets which was granted to the village board of trustees by the act of 1879 is not limited or circumscribed. Its power to vacate streets is full and ample, and reaches to *every possible case* where a village street might properly be vacated." (Emphasis supplied.)

In the present case, on November 15, 1892, the owners of the land on which Bennington is now located filed a plat for the purpose of laying out the Village of Bennington. On April 12, 1892, 4 years 5 months later, Bennington was incorporated and thereby acquired the power to control the streets within its corporate limits. Consequently, the 5-year period prescribed in 1879 Neb. Laws, § 3, p. 120, did not elapse prior to the time it became ineffective, in this instance, by virtue of the village's incorporation, and that legislation did not effect a vacation of the disputed parcel by "operation of law" as alleged by the Bowleys.

The motion of the village for summary judgment was

properly granted, and the decision of the district court is affirmed.

AFFIRMED.