IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


RAMOS V. AQUA PALACE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


DOUGLAS RAMOS, APPELLANT,

V.

AQUA PALACE, L.L.C., APPELLEE.


Filed January 6, 2026.    No. A-25-069.


Appeal from the District Court for Douglas County: TIMOTHY P. BURNS, Judge. Affirmed.

Jason M. Bruno and Guillermo M. Martinez, of Sherrets, Bruno & Vogt, L.L.C., for appellant.

Keith A. Harvat, of Houghton Bradford Whitted, P.C., L.L.O., for appellee.


BISHOP, WELCH, and FREEMAN, Judges.

FREEMAN, Judge.

INTRODUCTION

Douglas Ramos sued Aqua Palace, L.L.C., in Douglas County District Court, alleging breach of contract and violations of the Nebraska Consumer Protection Act (NCPA). Aqua Palace moved to dismiss, asserting that the parties' agreement contained an enforceable forum selection clause requiring litigation in Iowa. The district court granted the motion, finding the clause enforceable. On appeal, this court reversed and remanded the dismissal, holding that the district court failed to consider evidence relevant to whether an exception stated in Neb. Rev. Stat. § 25-415 (Reissue 2016) barred enforcement of the forum selection clause. On remand, the district court again found the forum selection clause valid and dismissed Ramos' claims. Ramos now appeals. For the reasons set forth below, we affirm.

- 1 -

BACKGROUND

In February 2021, Ramos, a Nebraska resident, contracted with Aqua Palace, an Iowa company, to remodel his pool located in Douglas County, which included furnishing and installing a new pool cover. During the remodel, Ramos claimed to have discovered that the pool cover was "the wrong size and [did] not fit." By that time, Ramos had paid approximately $40,000 to Aqua Palace. Ramos demanded that Aqua Palace honor its warranties and replace the defective cover, but no remedy was provided. In May 2023, Ramos filed suit in Nebraska alleging breach of contract and violation of the NCPA. He alleged damages including the $40,000 paid to Aqua Palace as well as the cost of removing and disposing of the current pool cover and installing a new one. He also claimed that Aqua Palace fabricated a debt of $814.40 as retaliation for the demands to fix the pool cover. Ramos did not attach a copy of the service contract to his complaint.

Aqua Palace moved to dismiss, asserting that the service contract between the parties contained a written forum selection clause which stated that the contract "shall be governed and enforced according to the laws of the State of Iowa. Parties agree that in the event of litigations instituted by either party, that personal jurisdiction for any legal claims will be heard in the State of Iowa, Pottawattamie County." Aqua Place relied on both § 25-415 and Neb. Ct. R. Pldg. § 6-1112(b)(6) to support their motion. Aqua Palace also attached the three page written contract, with the clause displayed prominently on page three. Page one was properly signed by Ramos, but pages two and three were left unsigned. Aqua Palace also submitted an affidavit from a co-owner, which included emails and invoices exchanged with Ramos during the remodel, all reflecting the same forum selection clause.

Ramos opposed the motion, and submitted an affidavit asserting that the parties did not agree upon the forum selection clause. The affidavit states, in relevant part:

(4) At no time, did I ever agree that disputes with Aqua Palace LLC would be heard or filed in Pottawattamie County Courts or anywhere else in Iowa. This was never discussed, let alone agreed to, by the parties.

(5) I never agreed to any of the terms contained on Pages 2 and 3 [of the parties' written agreement]. Those pages do not contain my initials or signature.

In July 2023, the district court sustained Aqua Palace's motion to dismiss, finding the forum selection clause enforceable. The court received only the affidavit from Aqua Palace's co-owner to the extent that it contained a copy of the sales contract. In finding the forum selection clause enforceable, the court relied on Ramos' signature on page one of the contract and the numbering of the subsequent pages to indicate that a binding contract was created between the two parties.

On appeal, this court reversed. We held that,

statutory language provides that such proper procedure is to file a motion to dismiss and has explained that when ruling on a motion to dismiss pursuant to § 25-415, a trial court should consider the complaint, the contract containing the forum selection clause, and any "additional evidence in order to determine whether any of the exceptions to enforcement of a forum selection clause under § 25-415 is present."

*Ramos v. Aqua Palace*, No. A-23-572, 2024 WL 1729895, at \*4 (Neb. App. Apr. 23, 2024) (selected for posting to court website). On remand, we instructed the district court to consider Ramos' affidavit as well as "any other evidence presented by the parties at the July 2023 hearing that is relevant to whether an exception applies to bar the enforcement of the forum selection clause pursuant to § 25-415." *Ramos v. Aqua Palace, supra*, 2024 WL 1729895 at \*4.

Consequently, the district court held a hearing in January 2025, during which the court considered the entirety of the affidavit from Aqua Palace's co-owner, two affidavits from Ramos, the appellate court's mandate, and an affidavit from Ramos' attorney. The district court again dismissed, ruling the forum selection clause valid and binding. The court reasoned that because Ramos signed the first page of the agreement, a binding contract was formed, making both parties subject to its terms, including the forum selection clause. The court emphasized that a party seeking to avoid such a clause carries a heavy burden and must prove that one of the statutory exceptions applies. Since Ramos failed to meet that burden, the clause remained valid and enforceable.

Ramos appeals.

## ASSIGNMENTS OF ERROR

Ramos assigns, summarized and restated, that the district court erred by (1) weighing evidence and making factual findings regarding the forum selection clause and (2) failing to apply exceptions under § 24-415.

## STANDARD OF REVIEW

Aside from factual findings, a ruling on a motion to dismiss pursuant to § 25-415 is subject to de novo review. *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing*, 273 Neb. 1026, 734 N.W.2d 750 (2007). Where the trial court's decision is based upon the complaint and its own determination of disputed factual issues, we review the factual findings under the clearly erroneous standard. *Id*.

Under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025).

## ANALYSIS

*Factual Findings on Forum Selection Clause.*

Ramos argues that the district court erred by making factual findings and effectively converted Aqua Palace's motion to dismiss into one for summary judgment. He contends the court thus improperly weighed evidence rather than determining whether genuine issues of material fact existed. Ramos maintains that his affidavit and the unsigned, undated pages containing the forum selection clause create factual disputes as to whether he ever received or agreed to those terms. He claims that because § 24-415 requires a written agreement to litigate elsewhere, and no such agreement was proven, the court should have drawn all reasonable inferences in his favor and denied the motion.

In support of his argument, Ramos relies on § 6-1112(b)(6), which provides that if, on a motion to dismiss for failure to state a claim, matters outside the pleadings are presented to and

not excluded by the court, the motion shall be treated as one for summary judgment. See *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020). In his view, whether a valid forum selection clause was part of the contract is a question for a jury. However, both Ramos' and Aqua Palace's reliance on § 6-1112(b)(6) in their respective motion and response is misplaced.

Notwithstanding this misapplication, Aqua Palace additionally relies on § 25-415 to support its motion to dismiss, which the Nebraska Supreme Court has recognized as the proper procedural mechanism for raising the enforceability of a forum selection clause. The Supreme Court has explained that in ruling on a motion to dismiss pursuant to § 25-415, a trial court engages in a procedure similar to ruling on a motion to dismiss for lack of subject matter jurisdiction under § 6-1112(b)(1), in that the court may treat the motion as a factual challenge and base its decision solely on the complaint or may need to make findings of fact. See *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing, supra*. See, also, *Jacobs Engr. Grp. v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018) (explaining that once factual challenge is made under § 6-1112(b)(1) motion, court holds evidentiary hearing in which it is permitted to review relevant evidence outside of pleadings and make findings of fact). Thus, when deciding a motion to dismiss pursuant to § 25-415, the existence and enforceability of a forum selection clause may be determined by a review of the complaint if the contract containing such clause is attached to the complaint, but the court might need to consider additional evidence in order to determine whether any of the exceptions to enforcement of a forum selection clause under § 25-415 is present. See *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing, supra*.

The standard of review for ruling on a motion to dismiss pursuant to § 25-415 should also be similar to that for ruling on a § 6-1112(b)(1) motion and therefore is as follows: aside from factual findings, a ruling on a motion to dismiss pursuant to § 25-415 is subject to de novo review. See *Polk Cty. Rec. Assn. v. Susquehanna Patriot Leasing, supra*. Where the trial court's decision is based upon the complaint and its own determination of disputed factual issues, we review the factual findings under the "clearly erroneous" standard. *Id*. With the governing legal principles established, we turn to the district court's application to the facts of the present case.

The district court concluded that the service contract between Ramos and Aqua palace contained a valid forum selection clause. The court considered the contract, the invoices, and affidavits in full to determine whether the parties agreed to the clause and whether any statutory exception applied. Such factual determinations are permissible under § 25-415 and reviewed only for clear error. At the end of the district court order, the judge specifically finds that "a binding contract was created between [Ramos] and [Aqua Palace], and each party is bound by its terms." Aqua Palace relied on this assertion in arguing that the district court was permitted to review the contract and attached materials to make its own factual determinations rather than rely on Ramos' assertions. As to the factual findings, this court finds no clear error.

The district court also determined that Ramos was bound by the forum selection clause. The record establishes that Ramos signed the first page of the contract, which expressly incorporated pages two and three containing the clause. The affidavit from Aqua Palace's co-owner presenting emails and invoices reiterating the contract terms, confirms that Ramos was consistently reminded and seemingly aware of the clause during the remodeling process. Despite his knowledge of the clause, Ramos continued to receive services from Aqua Palace and did not

contest the terms of the contract until litigation. Therefore, there is sufficient evidence to support the district court's finding that the forum selection clause was enforceable.

Furthermore, although Ramos submitted an affidavit denying his acceptance of the forum selection clause, the statement can be properly discounted as self-serving and inconsistent with the objective evidence. Nebraska case law has recognized that "any self-serving declaration . . . may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *Acklie v. Nebraska Dept. of Rev.*, 313 Neb. 28, 40, 982 N.W.2d 228, 237 (2022) (quoting *Houghton v. Nebraska Dept. of Rev.*, 308 Neb. 188, 953 N.W.2d 237 (2021)). Applying that principle, the district court could find that his actions were wholly inconsistent with his later claim that he was not made aware of the forum selection clause. However, under a clearly erroneous standard of review, an appellate court does not reweigh the evidence but considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See *State v. Parks*, 319 Neb. 773, 25 N.W.3d 146 (2025). Consequently, we find it appropriate to give weight to the district court's finding.

Accordingly, the district court applied the correct standard and reached a factual determination well within its authority under § 25-415. Dismissal was proper as no clear error was shown.

*Section 25-415 Exceptions.*

Ramos further argues that, even if a forum selection clause exists, § 25-415 successfully bars the enforcement of the clause. Section 25-415 provides,

> [I]f the parties have agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court will dismiss or stay the action, as appropriate, unless . . . (3) the other state would be a substantially less convenient place for the trial of the action than this state; (4) the agreement as to the place of the action was obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.

Ramos maintains that the district court failed to consider and find that Iowa would be a substantially less convenient forum than Nebraska under § 24-415(3). He contends that his Nebraska residency, the pool's location, the work performed, and his claims under the NCPA, show that Nebraska has the stronger interest and presents greater convenience. However, Aqua Palace argues that Ramos failed to meet his heavy burden of showing that Iowa would be a substantially less convenient forum, especially given that the district court indicated that the courthouse in Pottawattamie County was 10 minutes away from the downtown courthouse in Omaha, Nebraska.

A valid and enforceable choice of forum clause in a contract is sufficient in itself to waive the requirement of minimum contacts and to submit a nonresident to the jurisdiction of the forum state. *Northern Nat. Gas Co. v. Centennial Resource Prod.*, 316 Neb. 263, 4 N.W.3d 185 (2024). A party seeking to avoid a contractual forum selection clause bears a heavy burden of showing that the clause should not be enforced, and, accordingly, the party seeking to avoid the forum selection clause bears the burden of proving that one of the statutory exceptions applies. *Polk Cty.*

*Rec. Assn. v. Susquehanna Patriot Leasing*, 273 Neb. 1026, 734 N.W.2d 750 (2007). Absent a showing that trial in the contractual forum will be so gravely difficult and inconvenient that the party challenging the forum selection clause will be deprived of his or her day in court, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his or her bargain. *Northern Nat. Gas Co. v. Centennial Resource Prod., supra*.

Even more, a trial court may consider certain public interest factors. See *Milmar Food Group II v. Applied Underwriters*, 29 Neb. App. 714, 958 N.W.2d 920 (2021). Although *Milmar* concerns dismissal under forum non conveniens, the public interest factors discussed remain instructive. In *Milmar*, the court considered whether Nebraska was an inappropriate forum for a dispute governed largely by New York law and involving out of state parties, despite a contractual forum selection clause specifying Nebraska. This court analyzed whether public interest factors, including administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law, supported dismissing or staying the claim. See *id*. After evaluating these considerations, this court concluded that Nebraska had a sufficient interest in the litigation and that none of the public interest factors justified departure from the appellants chosen Nebraska forum. See *id*. While *Milmar* applied these factors in a forum non conveniens framework, they nonetheless highlight the narrow circumstances under which a forum selection clause could be set aside or deemed unreasonable.

Here, Ramos has not shown that trial in Iowa would be so gravely difficult or inconvenient as to deprive him of his day in court. Ramos claims only that Iowa is less convenient, but § 25-415(3) demands more than a mere showing of inconvenience. In evaluating convenience, courts look to practical factors that make trial expeditious and inexpensive, such as access to sources of proof, the cost of securing witness attendance and the ability to secure attendance of witnesses through compulsory process. See *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005). Pottawattamie County, Iowa, lies directly across the Missouri River from Douglas County. Potential witnesses, including Aqua Palace and Ramos, reside within minutes of both counties. Traveling a matter of minutes farther for hearings does not amount to the kind of inconvenience that the statute contemplates. Further, documentary evidence, including the contract and invoices, are available in either forum.

Public interest factors also do not weigh against enforcement here. Iowa has an equal interest in enforcing contracts selecting its court as forum as Nebraska does in resolving disputes arising from work performed within its borders. The Aqua Palace contract, however, specifically provides that any action "shall be" brought in Iowa, therefore implicating a mandatory selection clause. Iowa courts are fully capable of applying Nebraska law should a choice of law issue arise.

Ramos further asserts that the clause was obtained through misrepresentation and unconscionable means under § 25-145(4). Ramos claims that he never discussed the forum selection clause with Aqua Palace and that the blank unsigned pages attached to the contract support his position that those pages were added retroactively. In contrast, Aqua palace maintains that Ramos, again did not meet his heavy burden of showing that the clause was obtained through misrepresentation, duress, or other unconscionable means.

The Restatement (Second) of Contracts defines misrepresentation as "an assertion that is not in accord with the facts." *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 817, 824 N.W.2d 12,

25 (2012). A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so. *Id*. A misrepresentation "induces a party's manifestation of assent if it substantially contributes to [the party's] decision to manifest his [or her] assent." *Id*. at 809, 824 N.W.2d at 20. A contract is voidable by a party if his or her "manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which [he or she] is justified in relying." *Id*.

The unconscionability of a contract provision presents a question of law. *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006). An essential fact in determining unconscionability is the disparity in respective bargaining positions of parties to a contract. *Sinu v. Concordia University*, 313 Neb. 218, 983 N.W.2d 511 (2023). Unconscionability is determined in light of all the surrounding circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. *Adams v. American Cyanamid Co.*, 1 Neb. App. 337, 498 N.W.2d 577 (1992).

The record contains no evidence that Aqua Palace made any false assertions to induce Ramos to agree to the forum selection clause. Although Ramos claims the pages were retroactively added, he accepted the pool remodel and made payments according to the contract. It would strain credulity to believe that Ramos did not fully understand the intent of the agreement where he received multiple invoices that reiterated the forum selection clause. Furthermore, Ramos had multiple opportunities to review the contract. The clause was clearly presented in numbered pages, and there is no evidence it was concealed or disguised. Thus, the clause cannot be said to be unconscionable.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal. The court properly resolved the factual disputes. Ramos has not shown that trial in Iowa would be so inconvenient as to invoke § 25-415(3) or that the clause was obtained by misrepresentation or unconscionable means under § 25-415(4).

AFFIRMED.